**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SHAHIN EDALATDJU and NASILA EDALATDJU, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 09-cv-8017 |
| GUARANTEED RATE, INC. and BEN LAZER, | ) ) ) | **JURY DEMAND** |
| Defendants. | ) ) ) | |

**COMPLAINT**

Now come the Plaintiffs, by and through their attorney, J. Stephen Walker, and for their

Complaint against the Defendants states as follows:

**Parties**

1.    Plaintiffs Shahin Edalatdju and Nasila Edalatdju ("Edalatdjus") are husband and

wife and citizens and residents of California whose personal residence is located

in San Diego, California.

2.    Defendant Guaranteed Rate, Inc. ("GRI") is a Delaware corporation engaged in

the real estate financing and mortgage business with its principal place of business

located in Chicago, Illinois.

3.    Defendant Ben Lazer ("Lazer") is a citizen and resident of the state of Illinois and

an Illinois licensed residential real estate appraiser who does business in Cook

County, Illinois.

1

**Jurisdiction and Venue**

4.      Jurisdiction is based upon 28 U.S.C. §1332 because there is a complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) and (a)(2) in that the Defendants are located in this District, Plaintiffs' cause of action accrued in this District, and the real estate related thereto is located in this District.

**Background Facts**

6.      In or about the Spring of 2005, the Edalatdjus were seeking to identify residential properties as investments in the Las Vegas, Nevada area.  During the course of that effort, the Edalatdjus were introduced to American Invsco, a residential condominium developer located in Chicago, Illinois who was also involved in condominium developments in the Las Vegas area.

7.      In or about September, 2005, American Invsco provided the Edalatdjus with marketing materials related to its project known as Ontario Place located at 10 E. Ontario Street in Chicago, Illinois.  American Invsco offered to sell the Edalatdjus condominium units at 10 E. Ontario as investment properties under the terms of American Invsco's "2-2-2 lease program."  This sales and marketing program provided that:

A.      American Invsco or one of its affiliated entities would manage the investment properties at no charge to the Edalatdjus for two years and at customary market rates thereafter;

2

B.    American Invsco or one of its affiliated entities would guarantee monthly income to the Edalatdjus sufficient to pay their debt service based upon 90% financing, real estate taxes, and monthly Homeowner's Association ("HOA") dues for two years;

C.    That American Invsco would upgrade the interior construction of the units purchased during the 2-2-2 lease program; and

D.    That financing would be provided through preferred lenders selected and provided by American Invsco.

8.    Based upon American Invsco's representations and offer, on or about October 10, 2005, Shahin Edalatdju signed agreements to purchase four units at Ontario Place:

A.    Unit 4904 plus a garage space unit for $640,100.00;

B.    Unit 4603 plus a garage space unit for $501,200.00;

C.    Unit 4804 plus a garage space unit for $638,500.00;

D.    Unit 4301 plus a garage space unit for $502,800.00.

Ontario State, LLC, American Invsco's designated title holder formally accepted the Edalatdjus' purchase offer on October 21, 2005. Copies of the Purchase Agreements are attached hereto as Exhibits 1 through 4.

9.    Each of the Purchase Agreements signed by Shahin Edalatdju was contingent upon his obtaining financing on the terms represented and agreed to by the seller. See paragraph 3(d) of Exhibits 1 through 4.

10.    Pursuant to the terms of American Invsco's 2-2-2 program, the Edalatdjus were referred to GRI to secure the financing required to consummate the purchase of

3

the above units. Copies of Exhibits 1 through 4 were provided by American

Invsco to GRI prior to or at the same time as this referral.

11.     Subsequently, GRI, acting through Eric Burba, completed loan applications for

the Edalatdjus' signatures requesting financing as per the terms on their agreement

with American Invsco. GRI prepared the loan applications for the Edalatdjus

based upon their purchase of four separate and distinct residential condominium

units and not as a bulk purchase.

12.     GRI's approval of the Edalatdjus' loan applications was contingent upon its

obtaining an independent appraisal for each of the four units which reflected a fair

market value equal to or greater than the purchase price in each of the four

Purchase Agreements.

13.     Prior to Shahin Edalatdju's execution of the Purchase Agreements, GRI entered

into an agreement with Lazer pursuant to which Lazer would provide GRI with

the appraisal reports required to process GRI's preferred lender loans for units in

American Invsco's Ontario Place condominium development at 10 E. Ontario in

Chicago.

14.     At all times material hereto, Lazer, as an Illinois licensed residential real estate

appraiser, and GRI were aware that any appraisal of residential condominium

units located at 10 E. Ontario was under Illinois law and applicable federal

regulations required to be conducted and reported in accordance with the Uniform

Standards of Professional Appraisal Practice ("USPAP").

15.     Prior to processing the Edalatdjus' loan application, GRI was fully aware that the

4

Edalatdjus were purchasing the subject condominium units as investment properties pursuant to American Invsco's 2-2-2 program.

16. Prior to the submission of any appraisal report relating to the units under contract for sale to the Edalatdjus, Lazer had knowledge that the Edalatdjus were purchasing the units as investment properties and not as a primary residence or second home.

17. Lazer submitted his appraisal reports for the Edalatdjus' four units at 10 E. Ontario to GRI on November 21, 2005, copies of which are attached hereto as Exhibits 5 through 8 and incorporated by reference herein. Shortly thereafter, GRI authorized funding of the Edalatdjus' loan applications secured by first and second mortgages on each unit. The closing on the Edalatdjus' four units took place on November 29, 2005. The cost of Lazer's appraisals was paid by the Edalatdjus.

18. At all times material hereto, GRI had a duty to process the Edalatdjus' loan applications to finance their purchase of the four condominium units at 10 E. Ontario in accordance with applicable state and federal regulations.

19. At all times material hereto, GRI had a contractual obligation to exercise good faith in the processing of the Edalatdjus' loan applications.

20. As part of its business plan, GRI entered into agreements with various entities to sell prior to or shortly after funding any loans made by GRI as a preferred lender for American Invsco in the secondary mortgage market. GRI's sale of its first and second mortgages on condominium units located at 10 E. Ontario was expressly

5

designed to allow GRI to avoid any risk of a future loss due to the grossly inflated
market value of the collateral securing those loans.

21. In or about January, 2006, GRI sold its notes and first mortgages on the
Edalatdjus' units to CitiMortgage and its notes and second mortgages to National
City Mortgage and Countrywide.

22. In or about December, 2007, the Edalatdjus determined that it would be beneficial
to refinance their loans on their four units at 10 E. Ontario. The Edalatdjus
contacted GRI for their assistance in arranging the refinancing. GRI advised the
Edalatdjus that they could not provide any refinancing for the units and that they
would have to make arrangements with another lender.

23. Thereafter, on or about December 28, 2007, the Edalatdjus requested that GRI
provide them with copies of the appraisal reports for their four units. GRI advised
the Edalatdjus that the reports had been lost and were no longer available. The
Edalatdjus persisted in their request for copies of the appraisal reports. In
February, 2008, after numerous requests over a period of two months, GRI finally
provided the Edalatdjus with copies of the appraisal reports.

24. After the expiration of American Invsco's 2-2-2 program, the Edalatdjus
discovered that the amount of rent paid to them by American Invsco pursuant to
its 2-2-2 program was far greater than the actual market rent for their four units.
The Edalatdjus also determined that he could not refinance their loans on the four
units because the fair market value of the units was far less than their loan
balances.

6

25. As a result of the foregoing, the Edalatdjus discovered that the true rental value of their units was substantially less than half of their monthly debt service and fixed costs for the units.

26. In February, 2009, CitiMortgage commenced foreclosure proceedings in Cook County Circuit Court on its first mortgages on the Edalatdjus four units. These proceedings are currently pending.

**Count I**
**(Fraud)**

27. The Edalatdjus incorporate the allegations contained in paragraphs 1-26 as an for paragraph 27 of this Complaint as if fully set forth herein.

28. GRI knowingly and intentionally represented that it would exercise good faith in the processing of the Edalatdjus' loan applications and do so in accordance with applicable federal and state laws and regulations. GRI had full knowledge of the financing contingency provisions in the Edalatdjus' Purchase Agreements.

29. At all times material hereto, the Edalatdjus recognized and relied upon GRI's representations and their understanding that before approving their loans, GRI was obligated to obtain an appraisal of the fair market value of the four condominium units which reflected a fair market value equal to or in excess of the contract purchase price. GRI and Lazer at all times intended that the Edalatdjus would rely upon their representations regarding the processing of their loan applications and appraisal of the property.

30. Prior to any contact with the Edalatdjus, GRI and Lazer had full knowledge that

any qualified appraisal of the units located at 10 E. Ontario must be conducted and reported in accordance with USPAP standards. GRI and Lazer were also aware that any appraisal of the units conducted in accordance with USPAP standards would show a fair market value substantially lower than the Edalatdjus' contract prices.

31. No later than on November 21, 2005, GRI and Lazer had actual knowledge that Lazer's appraisals and appraisal reports had not been conducted or prepared in accordance with USPAP standards, including but not limited to the failure to disclose the 2-2-2 program incentives, use of unqualified comparable sales, failure to establish fair market value based upon the income approach, and misrepresentation of the number of owner-occupied units in Ontario Place. Notwithstanding this knowledge, GRI approved the Edalatdjus' loan applications, thereby certifying compliance with the financing contingency provisions of the Edalatdjus' Purchase Agreements and funded the first and second mortgages on each of the four units.

32. Prior to the closing on the Edalatdjus' four Purchase Agreements, GRI and Lazer knew that Lazer had grossly overstated the total fair market value of the four units by a minimum of $800,000.00.

33. As a direct result of GRI and Lazer's misrepresentations, the Edalatdjus have suffered substantial economic loss in an amount in excess of $800,000.00.

34. GRI and Lazer's conduct as alleged herein was knowing, intentional, reckless,

8

willful, malicious, and intended for their economic benefit and the Edalatdjus are entitled to an award of punitive damages.

WHEREFORE, Plaintiff Shahin Edalatdju and Nasila Edalatdju respectfully request the entry of judgment in favor of the Plaintiffs and against the Defendant GRI, awarding the Plaintiffs actual damages in excess of $800,000.00, punitive damages in an amount to be determined by the jury at trial, reimbursement of all fees and costs, including attorney's fees incurred by the Plaintiffs in this action, and for such other relief as the Court deems equitable and just.

## Count II
## (Conspiracy)

35.    The Edalatdjus incorporate the allegations contained in paragraphs 1 through 34 as and for paragraph 35 of Count II of this Complaint as if fully set forth herein.

36.    Prior to GRI's agreement to serve as a preferred lender for American Invsco's Ontario Place condominium development, it had an ongoing and established business relationship with Lazer providing for Lazer's provision of appraisal services for residential condominium real estate properties in which GRI had agreed to provide financing.

37.    Pursuant to his business dealings with GRI and his communications with GRI's representatives, including but not limited to Eric Burba and Joseph Caltabiano, Lazer and GRI agreed that Lazer would certify that his appraisals had been conducted and reported in accordance with USPAP standards even though GRI

had knowingly failed and refused to deliver to Lazer information essential to the conduct of any such appraisal, including but not limited to copies of the purchaser/borrower's purchase agreement and a statement of the incentives being provided by the seller.

38.   Lazer and GRI agreed to undertake this fraudulent and wrongful scheme in order to obtain fees, income, and other economic benefits from the appraisal, financing, and sale of condominium units, which otherwise would not qualify for financing at such grossly over-valued prices.

39.   Lazer and GRI each had full and complete knowledge that their actions and agreement were contrary to their duties and obligations under federal and state law and regulations.

40.   At all times material hereto, GRI had knowledge of factual information in its possession necessary to enable Lazer to conduct his appraisals in accordance with USPAP standards and refused to deliver it to him and/or instructed him to ignore such information, including but not limited to the Edalatdjus' underlying Purchase Agreements and purchase incentives provided by the developer-seller as part of the underlying agreement.

41.   At all times material hereto, Lazer had the duty and obligation to refuse to submit appraisal reports for units located at 10 E. Ontario until such time as GRI and/or the developer-seller provided him with the information necessary to conduct appraisals in accordance with USPAP standards.  Instead, Lazer knowingly and

intentionally agreed to provide GRI with bogus appraisal reports which he falsely certified as having been performed in compliance with USPAP in order to secure personal economic benefit from the transactions, including but not limited to his retention as the appraiser for all GRI loans at 10 E. Ontario.

42.     GRI and Lazer further agreed to take whatever action was necessary to conceal their wrongful actions and maintain their ongoing business relationship, which on information and belief, the Edalatdjus allege continues until the present date.

43.     At all times material to this Count, GRI's conduct was knowing, willful, and wanton demonstrating a total disregard for the integrity of the residential real estate market, the federal and state laws and regulations governing its participation in said market, and the interest of its loan applicants/borrowers. GRI's actions were designed and undertaken for the sole purpose of GRI's financial gain.

44.     As a direct result of the agreements and conspiracy between GRI and Lazer, the Edalatdjus closed on their purchase of four units at 10 E. Ontario at purchase prices far in excess of their fair market value and have suffered actual damages in excess of $800,000.00.

WHEREFORE, Plaintiffs respectfully request the entry of judgment in favor of the Plaintiffs and against Defendant GRI as follows: awarding actual damages to the Plaintiffs in excess of $800,000.00, restitution of all funds acquired by the Defendants as a result of the wrongful conduct, and for such other and further relief as the Court deems proper and just.

## Count III
## (Negligent Misrepresentation)
## Lazer Only

45.     The Edalatdjus incorporate the allegations contained in paragraphs 1 through 44 of this Complaint as and for paragraph 45 of Count III of this Complaint as if fully set forth herein.

46.     At all times material hereto and in his capacity as an Illinois licensed residential real estate appraiser, Lazer was engaged in the business of supplying information to clients and third parties regarding the fair market value and fair market rental value of residential real estate.

47.     At the time Lazer agreed, pursuant to his agreement with GRI, to conduct the appraisals on the four condominium units under contract for sale to the Edalatdjus, Lazer had personal knowledge that the Edalatdjus were the borrowers for each of the four appraisals and that GRI, the Edalatdjus, and other parties would be relying upon his appraisals in connection with the Edalatdjus' prospective purchase and financing of the units.

48.     Lazer affirmatively represented in each of the four appraisal reports prepared by him for the Edalatdjus' units that the appraisals and reports were conducted and prepared in accordance with USPAP standards, including but not limited to 25 expressly "certified standards and guidelines" (See pages 5 and 6 of Exhibits 5 through 8).  Contrary to his express representations to the Edalatdjus, Lazer's appraisals and reports were conducted and prepared contrary to Lazer's

certifications, including but not limited to certification numbers 1, 3, 4, 5, 7, 8, 9, 10, 13, 14, 15, 16, and 18. See pages 5 and 6 of Exhibits 5 through 8.

49. In each of his appraisal reports, Lazer falsely represented and certified that he did not use the income approach to determine fair market value due to "inadequate data." Contrary to this certification, Lazer made no substantive attempt to use the income approach to market value or review or even attempt to obtain the necessary data to do so. Lazer used the sales comparison approach to value at the express direction of GRI solely to enable him to establish a "fair market value" which would be in excess of the contract purchase price and conform to his agreements with GRI.

50. The fair market value set forth in each of Lazer's four appraisal reports is based upon his use of comparable sales which were not comparable to the subject units, including but not limited to the use of sales in properties which were predominately owner occupied condominium buildings rather than buildings whose units were to a very large extent owned by investors as rental properties like 10 E. Ontario.

51. At all times material hereto, the Edalatdjus relied upon their understanding that they would not (and could not) consummate or close on the purchase of the four units at 10 E. Ontario unless an independent appraisal of fair market conducted in accordance with USPAP standards reflected a fair market value which satisfied the financing contingency provisions in his Purchase Agreements.

13

52.     At no time did GRI or Lazer disclose to the Edalatdjus their prior and existing business relationship or their agreement to conceal, ignore, or misrepresent material facts relating to the appraised value of the units.

53.     Lazer either knowingly or as a direct result of his extreme negligence and failure to adhere to accepted professional standards of care as set forth in USPAP prepared, submitted, and certified appraisal reports for the four units under the Edalatdjus' Purchase Agreements which grossly inflated the fair market value of each of the units.

54.     As a direct result of Lazer's negligent and/or intentional misrepresentations of the fair market value of the Edalatdjus' four units, the Edalatdjus suffered and continue to suffer actual damages in excess of $800,000.00.

55.     As a direct result of Lazer's misrepresentations of the units' fair market value and failure to conduct the appraisals of the Edalatdjus' units in accordance with accepted professional standards of care and USPAP standards, Lazer is responsible and liable for damages suffered by the Edalatdjus in an amount equal to the difference between the Lazer's reported fair market value for each of the units and the true fair market value of the units properly conducted appraisals based on the income approach to value as of the date of his appraisals plus all subsequent damages suffered by the Edalatdjus as a direct result thereof.

WHEREFORE, Plaintiffs Shahin Edalatdju and Nasila Edalatdju respectfully request the entry of judgment in favor of the Plaintiffs and against the Defendant Ben Lazer awarding the

Plaintiffs actual damages in excess of $800,000.00, reimbursement of all fees and costs, and such

other relief as this Court deems proper.


Respectfully Submitted,

Shahin Edalatdju and Nasila Edalatdju


By ____/s/ J. Stephen Walker_____

J. Stephen Walker


Law Offices of J. Stephen Walker, P.C.

20 N. Clark Street, Suite 2450

Chicago, IL 60602

Tel: (312) 578-9191

Fax: (312) 578-9391