```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION
```

**SHAHIN EDALATDJU and NASILA**     )
**EDALATDJU,**                       )
                                     )
       Plaintiffs,     )
                                     )
  v.                          )  No. 09 C 8017
                                     )
**GUARANTEED RATE, INC. and**        )
**BEN LAZER,**                       )
                                     )
       Defendants.     )

### MEMORANDUM OPINION AND ORDER

Plaintiffs Shahin Edalatdju and Nasila Edalatdju sued Guaranteed Rate, Inc. ("GRI") and Ben Lazer ("Lazer") for fraud and other causes of action under Illinois law in connection with real estate transactions they entered into in 2005. Both defendants have filed motions to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, GRI's motion to dismiss is granted in part and denied in part; Lazer's motion to dismiss is denied.

### I.

In September 2005, American Invsco, a residential condominium developer, offered to sell the plaintiffs four condominium units in a building located at 10 East Ontario Street in Chicago. The offer was made as part of American Invsco's "2-2-2 Lease Program." Among other things, the program guaranteed the plaintiffs a monthly income sufficient to pay their debt service and other costs for the

first two years following the purchase. On November 10, 2005, plaintiffs signed the purchase agreements for each of the units. Each agreement was contingent upon plaintiffs' ability to obtain financing.

In accordance with the 2-2-2 Program, plaintiffs were directed by American Invsco to GRI for financing. GRI's financing, in turn, was contingent upon obtaining an appraisal demonstrating that each of the four units had a market value equal to or greater than the purchase price in the corresponding purchase agreements. GRI employed Lazer to perform the appraisals. On November 21, 2005, Lazer submitted his appraisals, and the loans were approved. The closing took place on November 29, 2005.

In December 2007, plaintiffs contacted GRI, hoping to refinance their loans on the four condo units. GRI was unwilling. Plaintiffs claim that after the 2-2-2 Program had expired, they learned that the amount of rent American Invsco had paid them during the first two years following the purchase "was far greater than the actual market rent for their four units." Compl. ¶ 24. More specifically, they claim that "the true rental value of their units was substantially less than half of their monthly debt service and fixed costs for the units." *Id.* ¶ 25. Plaintiffs also allege that during this period, they asked for copies of Lazer's appraisal reports, but were told that the documents had been lost. *Id.* ¶ 23. They eventually obtained copies of the reports, but

only after numerous requests over a two-month period. *Id.* In February, 2009, CitiMortgage (to whom GRI had sold its notes and first mortgages on plaintiffs' properties) initiated foreclosure proceedings.

Plaintiffs filed the instant suit in December 2009. The gravamen of their complaint is that GRI and Lazer misrepresented the value of the condo units and the standards in accordance with which the value of the units would be determined. The complaint asserts claims for fraud and conspiracy against both defendants, and a claim for negligent misrepresentation against Lazer.

## II.

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not its merits. *See, e.g.*, *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In resolving a Rule 12(b)(6) motion, all well-pleaded allegations in the complaint are taken as true, and all reasonable inferences are drawn in favor of the nonmoving party. *See, e.g.*, *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). Dismissal is warranted under Rule 12(b)(6) only where the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See, e.g.*, *Goren v. New Vision Intern., Inc.*, 156 F.3d 721, 726 (7th Cir. 1998). "[I]t is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief by

providing allegations that raise a right to relief above the speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (citations and quotation marks omitted).

   *A.  Fraud*

In Count I of their complaint, plaintiffs assert a claim for fraud against both GRI and Lazer.  "To state a fraud claim under Illinois law, a plaintiff must allege that the defendant: (i) made a false statement of material fact; (ii) knew or believed the statement to be false; (iii) intended to and, in fact, did induce the plaintiff to reasonably rely and act on the statement; and (iv) caused injury to the plaintiff."  *Reger Development, LLC v. National City Bank*, 592 F.3d 759, 766 (7th Cir. 2010) (citing *Redarowicz v. Ohlendorf*, 441 N.E.2d 324, 331 (1982)).  Fraud claims are subject to the heightened pleading requirements of Federal Rule 9(b).  *See, e.g.*, *Last Atlantis Capital LLC v. AGS Specialist Partners*, 533 F. Supp. 2d 828, 830 (N.D. Ill. 2008).  Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  As the Seventh Circuit has put it, Rule 9(b) requires a party to allege "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

   GRI contends that plaintiffs' fraud claim should be dismissed

because the complaint's allegations concerning its allegedly fraudulent conduct lack the particularity required under Rule 9(b). I agree. To begin with, plaintiffs fail to identify any particular fraudulent statement made by GRI. The complaint merely alleges that "GRI knowingly and intentionally represented to the Plaintiffs that GRI was processing and preparing Plaintiffs' loan applications in accordance with applicable federal and state laws and regulations and that GRI was and would exercise good faith in doing so." Pls.' Resp. to GRI at 9. Rule 9(b) requires that the content of allegedly fraudulent statements be identified with greater specificity. *See, e.g.*, *Graue Mill Development Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988, 993 (7th Cir. 1991) ("Graue Mill's complaint alleged that Colonial engaged in a scheme to defraud by making 'false representations that Colonial would disburse loan amounts in a prompt and expeditious manner, that Colonial would honor its obligations under the various agreements it entered into with Graue Mill and that Colonial would act in a reasonable and business-like manner in performing under these agreements.' This allegation -- the only one in the complaint that adverts to fraud -- fails to satisfy the requirements of Rule 9(b). Graue Mill has not alleged the *specific* content of any fraudulent statements or acts in its complaint.").

Plaintiffs' allegations of fraud against GRI are vague in other respects as well. The complaint does not clearly state who

is alleged to have made the fraudulent assertions. In their response, plaintiffs identify Eric Burba, one of GRI's employees, as the maker of the statements. But while the complaint permits this inference, it does not specifically allege that Burba made the statements in question. Similarly, plaintiffs do not allege when the fraudulent statement or statements were made. It is possible to infer that the statements were made between October 2005 (when plaintiffs were first put in contact with GRI) and November 29, 2005 (the closing date). Once again, however, the complaint contains no explicit allegation to this effect.

Finally, the complaint does not specify how, or by what mode of communication, the allegedly fraudulent statements were made. *See, e.g.*, *Sequel Capital Corp. v. Airship Intern. Ltd.*, 148 F.R.D. 217, 219-20 (N.D. Ill. 1993) ("The absence of these circumstances may seem insignificant, and it may seem petty to dismiss the claim solely because the complaint does not allege a place or mode of communication. Very little will be accomplished by doing so. But to respond properly to a charge of fraud, defendants need to be appraised of the specific statements that are claimed to constitute falsehoods."). For these reasons, plaintiffs' fraud claim is dismissed insofar as it is alleged against GRI.

Lazer, too, argues that plaintiffs' fraud claim must be dismissed because the complaint's allegations against him fail to meet Rule 9(b)'s requirements. He additionally maintains that

plaintiffs' fraud claim must be dismissed because they cannot show that they relied on his allegedly false statements. Neither of these arguments is persuasive.

First, the complaint's allegations concerning Lazer's alleged fraud are sufficient to meet Rule 9(b)'s pleading requirements. Since plaintiffs' claim against Lazer is based on representations made in connection with his appraisals, the who, what, when, where, and how can all be gleaned by examining his reports. It is perhaps unsurprising, therefore, that Lazer's Rule 9(b) argument is half-hearted at best. His only contention on the issue is that plaintiffs' "cause of action for fraud is not pled with specificity because it does not allege how any of Lazer's alleged misrepresentations were communicated to Plaintiffs." Lazer's Mem. at 11. Specifically, he asserts that "the Complaint does not allege that Plaintiffs received copies of the appraisal reports until at least two years after closing." *Id.*

As an argument based on Rule 9(b), this claim fails: Lazer's actual contention is not that the plaintiffs' allegations are lacking in particularity. For example, he does not maintain that there is anything unclear in plaintiffs' account of when and how his statements were communicated to them. The real thrust of his argument is that, insofar as plaintiffs concede that they were not aware of his statements until two years after the purchases were made, their fraud claim against him fails as a matter of law. In

other words, Lazer's Rule 9(b) argument is ultimately a recasting of his second argument -- namely, that the fraud claim fails because plaintiffs cannot establish that they relied on his statements.

At first glance, the latter argument seems sensible: there is no doubt something odd about the notion that a party could make an agreement in reliance on a representation that was not communicated to him until *after* he had already entered into the agreement. Indeed, Lazer hastens to point out that the plaintiffs had signed the purchase agreement with American Invsco before he even performed the appraisals.

However, on closer examination, Lazer's argument fails. This is because it neglects the fact that the purchase agreements in this case between plaintiffs and American Invsco were made expressly contingent on their ability to obtain financing. Since plaintiffs were able to obtain financing only because of Lazer's appraisals, the agreement would not have been consummated had it not been for his statements about the value of the properties.

Although Illinois courts have yet to confront this issue, courts in other states have found reliance in factual circumstances like those present here, and have upheld claims for fraud and negligent misrepresentation. In *Larsen v. United Federal Sav. & Loan Ass'n of Des Moines*, 300 N.W.2d 281 (Iowa 1981), for example, the plaintiffs signed an offer to buy a home for $45,000. However,

-8-

the agreement was contingent upon the sale of the plaintiffs' current residence and upon their obtaining a new $29,000 mortgage "subject to conventional financing." *Id*. at 283 (quotation marks omitted). The plaintiffs briefly inspected the home and, having noticed no problems, signed the purchase agreement. The plaintiffs then signed an application with UFS for a $29,000 loan. UFS later informed the plaintiffs that there were no problems with the appraisal. When it later became evident that the home suffered from a number of serious defects, they sued the bank for negligence.

The Iowa Supreme Court upheld the Larsens' claim, concluding that they had relied on the appraisal despite the fact that they had not seen it before making the purchase. *Id.* at 284. The court explained that "there was substantial evidence that [the plaintiffs] knew the significance of the appraisal, and that their purchase of the home depended on the $29,000 loan which in turn depended on the appraisal." *Id.* at 284.

Many other courts have reached the same result. *See, e.g., Riestenberg v. Broadview Federal Sav. & Loan Co.*, 843 F.2d 1392 (6th Cir. 1988) (unpublished disposition) (plaintiff stated claim against appraiser under Ohio law despite the fact that plaintiff entered into sales contract before he applied for the loan and despite the fact that the appraiser's report stated that it was confidential and solely for lender's use); *Costa v. Neimon*, 366

N.W.2d 896, 900 (Wis. Ct. App. 1985) (holding that reliance element of negligent misrepresentation claim was satisfied since, although plaintiff did not know that the defendant had performed an appraisal, plaintiffs understood that in order for "loan to be approved, the property must be appraised at a value at least equal to the selling price," and thus a jury could "infer that when the loan went through, the plaintiffs believed that the property had been appraised as having" the value of the loan); *Chemical Bank v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 425 N.Y.S.2d 818, 819 (N.Y. App. Div. 1980) ("If it be shown that a real estate appraiser, retained by a property owner to make an appraisal that he knows the owner will use to obtain financing, makes it in a grossly negligent manner so as to inordinately overstate the value, we are not . . . prepared to hold the appraiser exempt from liability to the damaged financing party.").

None of the authorities cited by Lazer is to the contrary. He cites several cases in which courts have held that plaintiffs were unable to establish reliance because the plaintiffs admitted that they had not seen the allegedly fraudulent statements before entering into a transaction. For example, *Good v. Zenith Electronics Corp.*, 751 F. Supp. 1320 (N.D. Ill. 1990), was a class action alleging fraud under federal securities law and Illinois common law. The suit was based on annual reports issued by Zenith that had allegedly misrepresented the company's financial

condition. The court held that the state law fraud claim failed because the named plaintiff admitted that he had not read the annual reports that contained the alleged fraudulent statements. Similarly, in *Colonial Bank & Trust Co. v. Kozlowski*, 435 N.E.2d 1251 (Ill. App. Ct. 1982), the plaintiffs alleged that they had been misled by the defendant's misrepresentations into making an investment. *Id.* at 1254. The court held that the plaintiffs had failed to show reliance upon the defendant's statements, because they had decided to make the investment before ever having met the defendant. *Id.*

These cases are easily distinguished: the agreements at issue in *Good* and *Colonial Bank* were not contingent upon later events in which fraud was alleged to have occurred. Here, by contrast, the purchase agreements were explicitly conditioned upon plaintiffs' ability to obtain financing. The Edalatdjus claim they were given to understand that they would not be bound by the agreement if financing was not procured; they also believed that any financing they were to obtain would be based on a fair assessment of the properties' worth. Like the plaintiffs in *Costa*, plaintiffs here knew that in order for the "loan to be approved, the property must be appraised at a value at least equal to the selling price," and that "when the loan went through, the plaintiffs believed that the property had been appraised as having" the value of the loan. *Costa*, 366 N.W.2d at 900.

-11-

Thus, GRI's motion to dismiss plaintiffs' fraud claim is granted, and Lazer's motion to dismiss the fraud claim is denied. Moreover, since Lazer's argument for dismissal of Count III's negligent misrepresentation claim is the same as the argument he advances with respect to the fraud claim, his motion to dismiss plaintiffs' negligent misrepresentation claim is denied as well.

*B.    Conspiracy*

Plaintiffs also allege a civil conspiracy. "Under Illinois law the elements of a civil conspiracy are (1) a combination of two or more persons (2) for the purpose of accomplishing, by some concerted action, either an unlawful purpose or a lawful purpose by unlawful means, (3) in furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827, 839 (N.D. Ill. 2007) (citing *Fritz v. Johnston*, 807 N.E.2d 461, 470 (2004)). Defendants argue that plaintiffs have failed to properly plead a claim for conspiracy. I disagree.

Defendants first contend that plaintiffs have failed to allege the conspiracy with sufficient particularity under Rule 9(b). For example, they argue that the complaint does not state which people at GRI participated in this conspiracy or what specific communications are at issue. They also claim that the complaint does not specify the time, place, or manner in which any of the overt fraudulent actions were committed.

Defendants are correct in asserting that Rule 9(b) applies to plaintiffs' conspiracy claim. Civil conspiracy is not a fraudulent tort by definition. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). However, "Rule 9(b) applies to 'averments of fraud,' not claims of fraud." *Id.* Thus, the question whether Rule 9(b) applies to any given conspiracy claim depends on whether the complaint's factual allegations amount to "averments of fraud." *Id.* Here, plaintiffs' conspiracy claim is predicated on the defendants' alleged fraud. As a result, Rule 9(b) applies. *Gaudie v. Countrywide Home Loans, Inc.*, 683 F. Supp. 2d 750, 760 (N.D. Ill. 2010) ("Because the underlying tort of the conspiracy is fraud, Rule 9(b)'s heightened pleading requirements apply to this claim.").

Plaintiffs' conspiracy claim meets Rule 9(b)'s requirements. It is true that the complaint does not describe all aspects of the alleged conspiracy in elaborate detail. In the context of a conspiracy claim, however, Rule 9(b) does not require such specificity. Rather, "[i]n the Seventh Circuit, a plaintiff who provides a 'general outline of the fraud scheme' sufficient to 'reasonably notify the defendants of their purported role' in the fraud satisfies Rule 9(b)." *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 897 (N.D. Ill. 2009) (quoting *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992)). "Although individualized information about the role of

-13-

each defendant in the fraud is generally required, 'the particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim.'" *Id.* (quoting *Corley v. Rosewood Care Ctr.*, 142 F.3d 1041, 1051 (7th Cir. 1998)). Here, plaintiffs allege that they submitted loan applications to GRI, and that GRI and Lazer acted together for the purpose of procuring inflated loans. According to plaintiffs, Lazer and GRI both knew that Lazer's appraisals significantly overstated the value of the condo units. *See, e.g.*, Compl. ¶ 32. The nature of the alleged conspiracy is sufficiently clear.

Defendants further argue that "Plaintiffs do not properly allege that Guaranteed Rate, Inc. or Lazer committed an overt tortious or unlawful act." Lazer Reply at 9. Here, too, I find the complaint's allegations to be sufficient. At a minimum, there can be no question that the complaint alleges the commission of an overt tortious act by Lazer -- namely, his submission of appraisals that allegedly overstated the properties' fair market value by $800,000.00. Compl. ¶ 32; *see, e,g.*, *Whitley*, 607 F. Supp. 2d at 898 ("TB & W's argument that Plaintiffs have failed to sufficiently allege that the value of the property was inflated is unpersuasive. Plaintiffs have alleged that the appraisal value of $295,000 was 'inflated relative to comparable homes in the area,' and that their "mortgage indebtedness is greater then the actual property value.'

At this stage, the Court must assume these allegations to be true.") (citations omitted). Since a tortious act must be alleged on the part of only one of the alleged conspirators, the conspiracy claim is adequately pleaded irrespective of whether plaintiffs have alleged an overt act on GRI's part.

Next, defendants maintain that "there is no fact alleged in the conspiracy, or the fraud count it incorporates, which in any way establishes that the appraisals of Ben Lazer were inaccurate." GRI Mem. at 6. They argue that the appraisals were accurate when Lazer issued them, and that the properties' decrease in value was attributable to the decline in the economy and housing market generally during that period. It is true that the allegations do not "establish" that Lazer's appraisals were inaccurate. At the pleading stage, however, I am required to accept plaintiffs' factual allegations as true. *See* Fed. R. Civ. P. 12(b)(6). Even under Rule 9(b), it is not necessary to plead evidence. *See, e.g.*, *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quotation marks omitted) (noting that a complaint need not plead evidence); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007) ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."); *Knowles v. Hopson*, No. 07-CV-6131, 2008 WL 2414849, at *2 (N.D.

Ill. June 12, 2008) ("Read together, Rule 9(b) and Rule 8 require that the complaint include the time, place and contents of the alleged fraud, but the complainant need not plead evidence.").

Finally, defendants argue that plaintiffs' conspiracy claim fails because the underlying fraud claim fails. It is true that "[f]ailure to allege sufficiently the underlying fraud claim will result in dismissal of the conspiracy claim." *Suburban Buick, Inc. v. Gargo*, No. 08 C 0370, 2009 WL 1543709, at *11 (N.D. Ill. May 29, 2009); *see also Platinumtel Communications, LLC v. Zefcom, LLC*, No. 08-CV-1062, 2008 WL 5423606, at *8 (N.D. Ill. Dec. 30, 2008); *Illinois Non-Profit Risk Management Ass'n v. Human Service Center of Southern Metro-East*, 884 N.E.2d 700, 711 (Ill. App. Ct. 2008) ("[Defendants] failed to adequately allege their underlying claim of common-law fraud, and thus their conspiracy claim fails as a matter of law."). This argument fails in light of my conclusion above that plaintiffs have stated a fraud claim against Lazer. Once again, plaintiffs only need to allege a concrete tortious act on the part of a single defendant. *See, e.g.*, *American Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, No. 03 CV 9421, 2010 WL 55708, at *10 (N.D. Ill. Jan. 4, 2010) ("Liability for civil conspiracy is joint and several, and only one tortfeasor need commit the overt act in order for both parties to be liable for civil conspiracy: Once a defendant knowingly agrees with another to commit an unlawful act or a lawful act in an unlawful manner, that defendant

may be held liable for any tortious act committed in furtherance of the conspiracy, whether such tortious act is intentional or negligent in nature.") (quotation marks omitted); *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 895 (Ill. 1994) ("Before liability for conspiracy may arise, 'some act must be committed by *one* of the parties in pursuance of the agreement, which is itself a tort . . . . [W]here means are employed, or purposes are accomplished, which are themselves tortious, . . . the conspirators *who have not acted* but have promoted the act will be held liable.'") (quoting W. Prosser, Torts § 46, at 293 (4th ed. 1971)). Thus, although I have dismissed the fraud claim against GRI, GRI can still be held liable for conspiracy.

Insofar as the defendants seek dismissal of plaintiffs' conspiracy claim, therefore, their motions are denied.

### III. Conclusion

For the reasons explained above, GRI's motion to dismiss is granted in part and denied in part, and Lazer's motion to dismiss is denied.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: August 27, 2010